JUSTICE LACY
delivered the opinion of the Court.
In this appeal, we consider whether Leon Thomas Harris was illegally detained by police and whether evidence obtained in a search of his truck should have been suppressed because it was obtained as a result of the illegal detention.
FACTS
On May 25, 2000, at approximately 4:00 a.m., Officer Blaine Davis initiated a traffic stop based on a broken license plate light he observed on a truck. Harris, the driver, and a single passenger were in the truck. Shortly after Officer Davis stopped the truck, a second police officer arrived on the scene. Both police vehicles were marked cars, and their flashing lights were activated.
Officer Davis asked Harris for his driver’s license and vehicle registration, but Harris produced only his social security card. Harris told Officer Davis that he knew he had been stopped because he had no license plate light. Officer Davis told Harris to get out of the truck. While they were standing outside of the truck, Officer Davis asked Harris questions to confirm Harris’ identity. After confirming Harris’ identity and, using a hand-held radio, verifying that Harris had a valid driver’s license with the Virginia Department of Motor *31 Vehicles, Officer Davis returned the social security card to Harris. He did not charge Harris with a traffic offense.
The officer then asked Harris if he had anything illegal in the track or on his person. Harris replied that he did not. When Officer Davis asked Harris if he could search the track, Harris consented. Officer Davis performed a pat down search on Harris and, after finding no weapons, told Harris to sit in the front passenger seat of Officer Davis’ patrol car. The passenger in the track was told to get out of the vehicle. The passenger complied and stood beside the passenger side of Officer Davis’ vehicle.
Officer Davis testified that during this time he had no reasonable articulable suspicion that either Harris or his passenger “had done anything illegal” and that Harris was free to go. However, Officer Davis did not tell either Harris or his passenger that they were free to go-
Officer Davis found several stolen items when he searched the vehicle. Harris was subsequently charged with two counts of grand larceny.
Prior to his trial, Harris filed a motion to suppress all evidence seized during the search of his track, maintaining that the search and seizure violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution and under Article I, § 10 of the Constitution of Virginia. The trial judge denied Harris’ motion, finding that the stop was a ‘Terry-stop with a consent to search.” Following a bench trial, Harris was convicted of two counts of petit larceny and sentenced to twelve months in jail on each count, with eleven months suspended, and the sentences to ran concurrently.
The Court of Appeals affirmed the convictions, finding that the officer returned Harris’ social security card, terminating the original traffic stop, the continuing encounter was a consensual encounter, and that Harris’ subsequent consent to the search was voluntary. The Court of Appeals also concluded that the evidence was sufficient to support the convictions. See Harris v. Commonwealth, 38 Va. App. 680, 568 S.E.2d 385 (2002). We granted Harris an appeal limited to the issues concerning whether Harris was illegally detained and whether the evidence obtained in the search of Harris’ track should have been suppressed.
THE DETENTION
Harris does not challenge the legality of the initial traffic stop. He contends that Officer Davis violated his Fourth Amendment rights *32 when the officer extended a lawful detention for a traffic infraction into an unlawful, non-consensual seizure. Harris further contends that his consent to the search was not voluntary and, therefore, the evidence obtained as a result of his illegal seizure must be suppressed.
The Fourth Amendment protects persons from unreasonable searches and seizures. U.S. Const. amend. IV. Police officers do not violate the Fourth Amendment when they stop and question an individual if they have reasonable articulable suspicion that the person is engaged in criminal activity, Terry v. Ohio, 392 U.S. 1, 30 (1968), or when the person’s encounter with the police is consensual. Florida v. Bostick, 501 U.S. 429, 437 (1991); Florida v. Royer, 460 U.S. 491, 501 (1983). There is no “litmus test” for determining whether an encounter is consensual or constitutes an illegal seizure. Id. at 506. If, however, a reasonable person would not feel free to decline an officer’s requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 558-59 (1980).
Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer’s language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. See Ohio v. Robinette, 519 U.S. 33, 36 (1996); Royer, 460 U.S. at 504; Mendenhall, 446 U.S. at 554. The decision whether the encounter was consensual must be made based on the totality of the circumstances. Mendenhall, 446 U.S. at 554.
On appeal, we apply a de novo standard of review in determining whether a person has been seized in violation of the Fourth Amendment. McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001). However, we also must review findings of historical fact for clear error and give due weight to inferences drawn from those facts. Ornelas v. United States, 517 U.S. 690, 699 (1996); Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).
In this case, when Harris was stopped initially, he told Officer Davis that he knew his license plate light was not working. Harris also knew that, when asked for his driver’s license and vehicle registration card, he handed Officer Davis only his social security card. *33 Although Officer Davis, after returning Harris’ social security card, considered Harris free to go, he did not tell Harris that he could leave. Furthermore, Officer Davis testified that he did not suspect Harris of any other criminal activity when he asked Harris for consent to search the truck.
The traffic stop was concluded when Officer Davis returned the social security card to Harris and, as stated by the Court of Appeals, “the detention supported by reasonable articulable suspicion ended.” Harris, 38 Va. App. at 687, 568 S.E.2d at 388. Thus, lawful continuation of the encounter between Harris and Officer Davis required that it proceed on a consensual basis. The Court of Appeals found that the ensuing encounter was consensual because there was no indication that Harris was restrained. Id. at 688, 568 S.E.2d at 389. We disagree.
At the time Harris was questioned about possession of illegal goods, he had not been told that he was free to leave or that Officer Davis was not going to charge him with a traffic violation. The failure to affirmatively inform Harris that he was free to leave does not by itself require a finding that the ensuing encounter was non-consensual. Robinette, 519 at 39-40. But in this case Harris knew he had committed a traffic violation and knew he had not complied with the officer’s request for his driver’s license and vehicle registration. The officer did nothing to indicate to Harris that he was no longer subject to detention for a traffic violation. Additionally, Harris remained in the presence of two armed, uniformed police officers and two patrol vehicles with activated flashing lights.
Under these circumstances, we believe that a reasonable person would not have known that the investigation of the traffic offense had terminated and, thus, would not have felt free to disregard the officer’s questions or have felt free to leave. Therefore, when Officer Davis began questioning Harris about possession of contraband, the encounter was not consensual and Harris was seized for purposes of the Fourth Amendment. Because Officer Davis had neither a warrant nor reasonable suspicion to believe that Harris was engaged in any criminal activity, this seizure violated Harris’s Fourth Amendment rights.
SUPPRESSION OF EVIDENCE
Harris maintains that because the evidence obtained in the search of his vehicle was obtained as a result of a violation of his Fourth Amendment rights, it should have been suppressed under the *34 “fruit of the poisonous tree” doctrine. That doctrine, initially discussed in Wong Sun v. United States, 371 U.S. 471, 487-88 (1963), provides that “statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will.” Royer, 460 U.S. at 501.
In this case, both the trial court and the Court of Appeals found that Harris’ consent to search was voluntary. The validity of this finding is suspect, however, because both courts considered Harris’ consent to have taken place during a legal encounter between Officer Davis and Harris.* Nevertheless, as stated above, voluntariness alone is not sufficient to overcome the taint arising from the unlawful seizure. Evidence obtained in the search of Harris’ truck is admissible only if it is not the product of an illegal seizure and is the result of an independent act of free will.
Here, the consent to search occurred within minutes of the illegal detention and under circumstances in which Harris was not free to leave or disregard the officer’s inquiry. The consent, search, and evidence recovered were the products of an illegal detention. Furthermore, nothing on this record indicates that the evidence in issue was obtained by the police pursuant to an independent act of free will. See Hart v. Commonwealth, 221 Va. 283, 289, 269 S.E.2d 806, 810 (1980). But see Reese v. Commonwealth, 220 Va. 1035, 1040, 265 S.E.2d 746, 749 (1980).
The Commonwealth has the burden to establish that Harris’ consent to search was not “obtained by exploitation of the illegal action.” Hart, 221 Va. at 288, 269 S.E.2d at 809. Based on this record, we conclude that the Commonwealth failed to meet this burden. Thus, the evidence obtained as a result of the illegal seizure should have been suppressed as the “fruit” of an illegal seizure. Accordingly, we will reverse the judgment of the Court of Appeals, vacate Harris’ conviction, and remand the case to the Court of Appeals with direction that the case be remanded to the trial court for further proceedings if the Commonwealth be so advised.

Reversed and remanded.

 The trial court considered the consent to search part of a lawful “Terry-stop.” The Court of Appeals held that the consent to search was part of a consensual encounter.