COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Humphreys and Clements
Argued at Alexandria, Virginia


LIONEL G. CARDENAS
                                                    MEMORANDUM OPINION* BY
v.  Record No. 1070-03-4                     JUDGE JEAN HARRISON CLEMENTS
                                                          MARCH 30, 2004
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                                Paul F. Sheridan, Judge

            Ronald L. Hiss for appellant.

            Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
            Attorney General, on brief), for appellee.


        Lionel G. Cardenas was convicted in a bench trial of possession of marijuana, in violation

of Code § 18.2-250.1.  On appeal, Cardenas contends the trial court erred in denying his motion

to suppress the marijuana found by police in his car and on his person as the result of an

unlawful detention and search that violated his Fourth Amendment rights.  Finding no error, we

affirm the judgment of the trial court.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

In reviewing a trial court's ruling on a motion to suppress, we view the evidence, and all reasonable inferences fairly deducible therefrom, in the light most favorable to the party prevailing below, the Commonwealth in this case.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  In addition, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

Viewed in accordance with these standards, the evidence established that, on August 24, 2002, Officer Brian Mangione of the Arlington County Police Department, who was wearing a standard police uniform and driving a marked police car, pulled Cardenas over for driving a vehicle with expired license plate tags.  Cardenas turned into a parking lot and stopped his car in a parking space adjacent to a building.  The front of Cardenas's car was "up against the wall" of the building.  His emergency lights still activated, Mangione stopped his cruiser behind Cardenas's car, leaving enough room to allow Cardenas to safely pull his car out of the parking space and leave the lot.

Exiting his vehicle, Officer Mangione approached Cardenas and asked him for his driver's license and registration.  Cardenas, who was alone in the car, produced the requested documentation.  After explaining to Cardenas why he had been stopped, Mangione returned to his vehicle to check the license and registration and to determine whether Cardenas had any outstanding warrants.  This process took just "a few minutes."  After verifying that the vehicle registration had expired in April 2002 and discovering Cardenas had a pending possession of marijuana charge, Mangione wrote out a summons for the expired tags.

While Officer Mangione was writing the summons, a second patrol car, driven by Officer Michael Ward, arrived.  Ward did not activate his emergency lights.  He parked his vehicle

beside and to the left of Mangione's car, again leaving enough room between his car and Cardenas's car to allow Cardenas to safely back out of the parking space and exit the lot.

Officer Mangione returned to Cardenas's car and explained to Cardenas that he was issuing him a summons for the expired tags. Mangione had Cardenas sign the summons and explained to him the procedures for pre-paying or disputing the ticket.

After giving Cardenas a copy of the summons and returning his license and registration to him, Mangione asked Cardenas if he had anything illegal in his car. Cardenas said he did not. Mangione then asked Cardenas "once or twice" if he could search the car, and Cardenas said that he could. At the time, Officer Ward was out of his patrol car and visible.

Officer Mangione's tone of voice was calm and conversational throughout the encounter. He never told Cardenas that he would search Cardenas's car even if Cardenas did not consent.

Cardenas was "very cooperative" during the encounter. He never indicated that he wished to leave and never told Mangione that he could not search the car.

After consenting to the search, Cardenas got out of the car and stood near Officer Ward at the rear of the car. In searching Cardenas's car, Officer Mangione discovered a backpack in the front passenger area. He asked Cardenas if the backpack was his and if he could look inside it. Cardenas responded affirmatively to both questions. Inside the backpack, Mangione found a "smoking device," a "pocket scale," and a baggie of marijuana. Mangione then arrested Cardenas and read him his <u>Miranda</u> rights. Following the arrest, a third officer arrived in a patrol car. A search of Cardenas incident to the arrest revealed another baggie of marijuana in his wallet.

After a February 20, 2003 hearing on Cardenas's motion to suppress the evidence found in his car and on his person, the trial court denied the motion and subsequently convicted

Cardenas on his stipulation that the facts were sufficient to establish his guilt. This appeal followed.

## II. ANALYSIS

Cardenas does not dispute the lawfulness of the traffic stop by Officer Mangione. Instead, relying on Harris v. Commonwealth, 266 Va. 28, 31-33, 581 S.E.2d 206, 209-10 (2003), he claims that Mangione "violated his Fourth Amendment rights when the officer extended a lawful detention for a traffic infraction into an unlawful, non-consensual seizure." Cardenas further argues that, because he was not free to leave, having been illegally detained, his consent to the search was not voluntary and was therefore invalid. Thus, he concludes, the evidence obtained as a result of the illegal seizure and search must be suppressed.

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee, 25 Va. App. at 197, 487 S.E.2d at 261 (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "[T]he question whether a person has been seized in violation of the Fourth Amendment is reviewed *de novo* on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

In Harris, the Supreme Court held that once a lawful traffic stop concludes, the "lawful continuation of the encounter between [the driver] and [the officer] require[s] that it proceed on a consensual basis." 266 Va. at 33, 581 S.E.2d at 210. In that case, the traffic stop ended when the officer returned the driver's documentation back to the driver. Id. Likewise, the traffic stop in this case ended when Officer Mangione gave Cardenas the summons and returned his driver's license and registration to him, thus ending the detention based on reasonable suspicion. See id.

- 4 -

The issue before us, then, is whether the basis of the continued encounter was properly

consensual.

> We have summarized the law governing consensual encounters as follows:

>> A . . . police-citizen encounter [is] a seizure for Fourth
>> Amendment purposes "[o]nly when the officer, by means of
>> physical force or show of authority, has in some way restrained the
>> liberty of a citizen." Florida v. Bostick, 501 U.S. 429, 434 (1991).
>> "So long as a reasonable person would feel free 'to disregard the
>> police and go about his business,' the encounter is consensual and
>> no reasonable suspicion is required." Id. (citation omitted). . . . In
>> determining whether the encounter was consensual, we must
>> "consider all the circumstances surrounding the encounter to
>> determine whether the police conduct would have communicated
>> to a reasonable person that the person was not free to decline the
>> officers' requests or otherwise terminate the encounter." Id. at
>> 439.

>> In determining whether a reasonable person would feel he
>> or she was not free to terminate an encounter with the police,
>> several jurisdictions, including Virginia, have utilized a set of
>> factors first articulated by Justice Stewart in his opinion in United
>> States v. Mendenhall, 446 U.S. 544 (1980) (opinion of Stewart, J.).
>> See United States v. Galvan-Muro, 141 F.3d 904, 906 (8th Cir.
>> 1998); United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991);
>> Parker v. Commonwealth, 255 Va. 96, 101-02, 496 S.E.2d 47, 50
>> (1998); Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d
>> 645, 648 (1992). Those factors include: "the threatening presence
>> of several officers, the display of a weapon by an officer, some
>> physical touching of the person of the citizen, or the use of
>> language or tone of voice indicating that compliance with the
>> officer's request might be compelled." Mendenhall, 446 U.S. at
>> 554 (opinion of Stewart, J.).

Dickerson v. Commonwealth, 35 Va. App. 172, 178-79, 543 S.E.2d 623, 626-27 (2001) (second

alteration in original). "[E]ven when officers have no basis for suspecting a particular individual,

they may generally ask questions of that individual . . . and request consent to search . . . [,] as

long as the police do not convey a message that compliance with their requests is required."

Bostick, 501 U.S. at 434-35 (citations omitted). "Fourth Amendment scrutiny is triggered only if

the encounter" is not consensual. Londono v. Commonwealth, 40 Va. App. 377, 399, 579 S.E.2d 641, 651-52 (2003).

While admitting there was no evidence of any physical coercion or restraint by the officers during the encounter, Cardenas points to the presence of two officers, their cruisers parked behind his vehicle, and their failure to inform him that he could leave as evidence enough to demonstrate that he was seized. Cardenas contends that a reasonable person standing in his shoes would not have felt free to leave. Thus, he concludes, the encounter was impermissibly coercive. We disagree.

We find no evidence in the record of any perceived or actual threat by the officers. Prior to Cardenas's arrest, there were no more than two officers present. Neither displayed his weapon. There was no physical contact until the arrest. Officer Mangione used a conversational tone of voice throughout the encounter. All relevant documentation—the summons, driver's license, and registration—was returned to Cardenas, indicating that the traffic violation had been dealt with and the stop had concluded. At that point, Cardenas was able to drive away, since neither cruiser blocked his egress. The omission of an explicit instruction by the officer that the detention was over and Cardenas was free to leave was not enough, alone, to vitiate consent. See Harris, 266 Va. at 33, 581 S.E.2d at 210 ("The failure to affirmatively inform [the driver] that he was free to leave does not by itself require a finding that the ensuing encounter was non-consensual." (citing Ohio v. Robinette, 519 U.S. 33, 39-40 (1996))).

In short, evaluating the totality of the circumstances, we conclude that a reasonable person in Cardenas's shoes, having received the summons and his identifying documents, would have known the detention for the traffic violation was over and felt free to leave. For this reason, we hold that the continuation of the encounter after the traffic stop had ended was consensual. Therefore, the trial court did not err in finding Cardenas was not illegally detained.

- 6 -

As presented, Cardenas's arguments concerning the invalidity of his consent to the search and the inadmissibility of the evidence thus seized depend wholly upon the success of his contention that he was illegally detained.  Having determined that the coercive portion of the encounter ended when Mangione issued the summons and returned Cardenas's license and registration to him, we further conclude that Cardenas's explicit acquiescence to the search during the consensual portion of the encounter was valid.  See Mendenhall, 446 U.S. at 558-59 ("Because the search of the respondent's person was not preceded by an impermissible seizure of her person, it cannot be contended that her apparent consent to the subsequent search was infected by an unlawful detention.").

Accordingly, we affirm Cardenas's conviction.

Affirmed.