COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.       Record No. 0243-07-1          CHIEF JUDGE WALTER S. FELTON, JR.
                                            JUNE 26, 2007
DELPHINE BELFIELD


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellant.

Sean H. Jung, Assistant Public Defender (Office of the Public
Defender, on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the pre-trial order of the Circuit

Court of the City of Hampton (trial court) granting Delphine Belfield's (Belfield) motion to

suppress evidence seized in a search incident to her arrest on an outstanding warrant.  The

Commonwealth contends that the trial court erred in ruling that Belfield was illegally seized when

Hampton Police Officer C. Kirk Shelton (Officer Shelton) requested her identification and

discovered the outstanding warrant for her arrest.  For the reasons that follow, we reverse the trial

court's ruling suppressing the evidence and remand for further proceedings consistent with this

opinion.

I.  BACKGROUND

"Upon review of an evidentiary suppression ruling, we view the evidence in the light

most favorable to [Belfield] the party prevailing below, granting to it all reasonable inferences

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fairly deducible therefrom." Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). However, "'[u]ltimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). Similarly, "[w]e analyze a trial judge's determination whether the Fourth Amendment was implicated by applying *de novo* our own legal analysis of whether based on those facts a seizure occurred." Id. at 198, 487 S.E.2d at 261.

Applying these principles, the evidence establishes that at approximately 1:40 a.m. on April 29, 2006, Officer Shelton responded to a radio dispatch regarding an anonymous tip reporting possible drug activity involving a four-door white Lincoln, bearing a specific Virginia license tag. The tip indicated that the car was parked on the northeast side of the parking lot of a Walgreen's store open twenty-four hours a day. Shortly thereafter, Officer Shelton observed a car matching the description and license tag number described in the dispatch parked in the Walgreen's parking lot in a space farthest away from the front door of the store. There were no other cars parked near that car. All other cars in the parking lot were parked in the front of the store near the business entrance. Officer Shelton pulled his patrol car in behind the described car so that it was headed diagonally toward it, and parked twenty to thirty feet behind it. He observed three people sitting in the car: Belfield sitting in the front passenger seat, and two men sitting in the rear passenger seat. No one was in the driver's seat.

He approached the car and asked Belfield "why they were [sitting] at that location." Belfield told him that "she was waiting for her brother and his girlfriend to come out of the

store."[1] Officer Shelton related to Belfield that "[he] received a complaint of possible drug activity" involving a car that matched the description and license plate number of the car in which she was sitting. He asked "if she had any identification[2] at which time she provided [him] with an I.D. card."

Officer Shelton ran Belfield's identification information through the police records system and discovered that there was a warrant on file for her arrest. He then placed her under arrest pursuant to that warrant. During the search incident to her arrest, Officer Shelton discovered cocaine.

Prior to trial, Belfield moved to suppress the cocaine discovered in the search incident to her arrest. She argued that she was illegally seized when she was detained by Officer Shelton and asked for her identification. She contended that the seizure was illegal as it was based solely on an uncorroborated anonymous tip and that Officer Shelton lacked any reasonable articulable suspicion to believe that she was engaged in criminal activity. She asserted that the cocaine recovered in the search incident to her arrest was inadmissible as a fruit of the illegal seizure. The trial court granted Belfield's motion to suppress. It ruled that Officer Shelton seized Belfield using his patrol car to block the driverless car in which she was sitting from leaving the parking lot, and proceeding to question her about possible drug activity involving that car. The trial court found that her seizure was based solely on an uncorroborated anonymous tip, lacking sufficient reliability to establish reasonable articulable suspicion that she was engaged in criminal activity. Accordingly, it concluded that Belfield was illegally seized when she was

---

[1] The record on appeal is silent as to whether anyone returned to the car during the time these events were taking place.

[2] A backup officer arrived at the scene shortly after Officer Shelton initiated contact with Belfield. The record indicates that the backup officer had not yet arrived when Officer Shelton asked Belfield for identification.

asked to produce her identification, rendering all the evidence recovered pursuant to the search following her arrest inadmissible.  This appeal by the Commonwealth followed.

## II.  ANALYSIS

The Commonwealth contends that the initial encounter between Officer Shelton and Belfield, during which Belfield produced her identification, was consensual and that the encounter "never lost its consensual nature until [Belfield] was arrested."  We agree.

"The Fourth Amendment protects persons from unreasonable searches and seizures [by government officials]."  Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003).  "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons."  Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)).  "A consensual encounter occurs when police officers approach persons in public places 'to ask them questions,' provided 'a reasonable person would understand that he or she could refuse to cooperate.'"  Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).  "Even when law enforcement officers have no basis for suspecting a particular individual, they may . . . ask for identification . . . provided they do not induce cooperation by coercive means."  Drayton v. United States, 536 U.S. 194, 201 (2002).

"A [consensual] police-citizen encounter becomes a seizure for Fourth Amendment purposes 'only if, in view of all of the circumstances . . . a reasonable person would have believed that he was not free to leave.'"  Wechsler v. Commonwealth, 20 Va. App. 162, 170, 455 S.E.2d 744, 747 (1995) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  "So long as a reasonable person would feel free 'to disregard the police and go about his business,' . . . no reasonable suspicion is required."  Londono v. Commonwealth, 40 Va. App. 377, 398, 579 S.E.2d 641, 651 (2003) (quoting Bostick, 501 U.S. at 434).

In determining whether a seizure has occurred, courts consider various factors including

> the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. The decision whether the encounter was consensual must be made based on the totality of the circumstances.

Harris, 266 Va. at 32, 581 S.E.2d at 209 (citations omitted). "We also examine what, if anything, the officer stated to the individual during the encounter." Barkley v. Commonwealth, 39 Va. App. 682, 692, 576 S.E.2d 234, 239 (2003). "When a police officer confronts a person and informs the individual that he or she *has been specifically identified as a suspect in a particular crime which the officer is investigating*, that factor is significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave." McGee, 25 Va. App. at 200, 487 S.E.2d at 262 (emphasis added).

Viewing the evidence in the light most favorable to Belfield, Commonwealth v. Spencer, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995), we conclude that Belfield was not seized for purposes of the Fourth Amendment at the time Officer Shelton parked his car twenty to thirty feet from the car in which Belfield was sitting, asked her why she was there, and asked for and received identification. See Drayton, 536 U.S. at 201; Londono, 40 Va. App. at 399, 579 S.E.2d at 651. Officer Shelton was the only officer at the scene when he initiated contact with Belfield. Although he arrived in a marked patrol car, its emergency lights were not activated. The record shows that as no other cars were parked in the area, the car, assuming someone were to take the driver's seat, was not blocked from leaving the parking lot. Nothing in the record demonstrates that Belfield or the passengers in the rear seat were prevented from leaving the car and walking away once the officer approached them. When Officer Shelton approached the car his service revolver was holstered and he had only a flashlight in his hands. The dialogue between Belfield

and Officer Shelton leading to the production of her identification card was brief. Officer Shelton had already received Belfield's identification by the time the second officer arrived "[a]pproximately a minute, a minute and a half" later.

Moreover, while Officer Shelton informed Belfield that he was investigating a complaint of possible drug activity, involving a car matching the description of the car in which Belfield and the others were sitting, he did not accuse Belfield of drug activity or tell her that she was the focus of the investigation. He simply asked "her why they were sitting in the parking lot especially parked so far away from the store." When Belfield stated that they were waiting for her brother and his girlfriend, Officer Shelton asked her for her identification without making any accusation that she was involved in illegal drug activity.

We note that circumstances in McGee, 25 Va. App. at 196-97, 487 S.E.2d at 260-61, are distinguishable from those presented here.[3] In McGee, three officers responded to a tip from an anonymous informant that a "black male wearing a white t-shirt, black shorts, and white tennis shoes was selling drugs" at a specific location. Id. at 196, 487 S.E.2d at 260. The anonymous tipster "did not relate the circumstances under which the drugs were being sold, the identity of the seller, the nature of the drugs being sold or where the drugs were located." Id. However, when the officer there approached McGee, he told McGee that he was responding to a dispatch specifically alleging that "[McGee] was on the corner selling drugs and [that he] matched the description of the person who had been reported selling drugs." Id. After he asked McGee for permission to conduct a pat-down search, the officer discovered contraband in McGee's clinched

---

[3] We also note that the circumstances in Jackson v. Commonwealth, 267 Va. 666, 594 S.E.2d 595 (2004), a case Belfield cites in support of her argument that she was unlawfully seized, are distinguishable from those presented here. In Jackson, the Court determined that an illegal seizure occurred when officers conducted an investigative traffic stop following an anonymous tip that had not been determined to be reliable. Here, there was no investigative traffic stop.

fist. We concluded there that the officers illegally seized McGee when they approached him based solely on an uncorroborated anonymous tip and specifically accused him of selling drugs at that location.

Unlike in McGee, Officer Shelton did not tell Belfield that he specifically suspected her of engaging in illegal drug activity. He did not ask her to step out of the car. When he asked her why she was there, she responded. He told her that he had received a complaint reporting possible drug activity involving a car matching the description of the car in the parking lot. In McGee, the seizing officer conducted a pat-down. Here, Officer Shelton simply requested Belfield's identification, which she promptly supplied. Belfield's seizure occurred only after Officer Shelton received information that there was an arrest warrant on file commanding her arrest.[4]

From the totality of these circumstances, we conclude that the initial encounter between Officer Shelton and Belfield was consensual and continued to be so when he asked Belfield for her identification. Once Officer Shelton learned of the outstanding warrant commanding the arrest of Belfield, the encounter became a lawful seizure and the evidence found during the search incident to the arrest was lawfully obtained. Accordingly, we hold that the trial court erred in granting Belfield's motion to suppress. Having concluded that the initial encounter between Officer Shelton and Belfield was consensual, it is not necessary for us to address whether there was sufficient reliability of the anonymous tip to provide reasonable articulable suspicion for Officer Shelton to detain Belfield for further investigation.

---

[4] The incriminating evidence sought to be suppressed was discovered during a search incident to Belfield's arrest pursuant to an unchallenged arrest warrant. Given our holding, we need not address whether the arrest warrant purged any illegal taint associated with the prior, allegedly unlawful, encounter. See generally, 6 Wayne R. LaFave, Search & Seizure § 11.4(d) (2004 & Supp. 2007).

For these reasons, we reverse the trial court's ruling suppressing the cocaine and remand for further proceedings consistent with this opinion.

Reversed and remanded.
