COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia


BRENDA DENISE MUHAMMAD

                                                 MEMORANDUM OPINION* BY
v.        Record No. 3054-08-1           JUDGE ROBERT J. HUMPHREYS
                                                     APRIL 27, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge

Joseph A. Sadighian, Senior Assistant Appellate Defender (Office of
the Appellate Defender, on briefs), for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


        Brenda Denise Muhammad ("Muhammad") was convicted, pursuant to a conditional

guilty plea, of possession of cocaine, in violation of Code § 18.2-250; and possession of heroin,

in violation of Code § 18.2-250.  On appeal, Muhammad contends that the trial court erred when

it denied her motion to suppress the evidence obtained incident to her arrest.  Specifically,

Muhammad maintains that the stop was not consensual and that the officers lacked reasonable

articulable suspicion that she was engaged in criminal activity.  Thus, Muhammad argues that

she was detained in violation of her Fourth Amendment rights, and any evidence seized from her

person should be suppressed as "fruit of the poisonous tree."  For the following reasons, we

disagree with Muhammad and affirm.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (citation omitted). So viewed, the evidence is as follows.

On July 10, 2008, at 2:10 a.m., Officer B. Reid ("Reid") and Officer Schultz ("Schultz") of the Portsmouth Police Department were on patrol and observed Muhammad and two other women in the parking lot of a convenience store. Reid also observed a truck parked on the street next to the store. The driver of the truck conversed with a man on the street as the officers approached. The store was closed at this time, and the officers had a "trespass authorization" for the business. According to Reid, the business is located in a "pretty rough neighborhood" that Reid characterized as a "high drug, high crime" area. Reid did not observe any illegal activity, but testified that the women were speaking loudly. Reid and Schultz arrived in their marked cruiser, approached the women, and told them that that they were being too loud due to the fact that it was a "residential" neighborhood. While speaking with them Reid did not threaten anyone, kept her weapon in her holster, and spoke in a normal voice. Reid was familiar with Muhammad because she had dealt with her on several previous occasions.

Since Muhammad did not have an "identification card" on her, Reid asked for and received her name, date of birth, social security number, and address and wrote it down.[1] Reid did not inform any of the individuals that she was running their information through the law enforcement

---

[1] None of the other women had identification cards on them either, and Reid obtained their identifying information as well. The men in and by the truck provided identification to the officers.

computer system. During the encounter, one of the other women started to walk off, and Reid asked her "Where are you going? You're not going to hang out with us."[2] The other woman came back to the group, but was not told by Reid to do so. Reid never touched Muhammad during this exchange. Reid also told one of the men by the truck to "sit still" during the encounter. Schultz stood near the men while Reid ran the information through the computer system.

When Reid found out from police "dispatch" that there was an outstanding arrest warrant for Muhammad, she arrested her. In the search incident to that arrest, Reid discovered a glass smoking device in Muhammad's underwear and a capsule of heroin inside a dollar bill in her bra. Reid's entire contact with Muhammad lasted five to seven minutes prior to arresting her. Reid testified that the purpose for asking for identification from the group of women was based on the fact that they were on the property of a closed business for which there was a trespass authorization. Reid further stated that she was investigating who was on the property and what they were doing.

Muhammad contended to the trial court in her motion to suppress that the drug evidence discovered on her when she was arrested was the fruit of an unlawful seizure because a reasonable person would not have viewed the encounter as consensual, and the police had no reasonable articulable suspicion to detain her. The trial judge denied her motion and stated: "I certainly don't think it was an unreasonable encounter and once [officers] got the warrant, obviously everything from then on was clearly okay, so I'm going to overrule your objection."

Muhammad subsequently entered a conditional plea of guilty to both drug charges, preserving the right to appeal the trial court's denial of her motion. This appeal follows.

---

[2] Both parties agreed at oral argument that the record was not clear on whether this question was asked prior to obtaining the women's identification information.

ANALYSIS

Muhammad contends that she was unlawfully seized at the time Reid asked for her identifying information, and therefore the subsequent discovery that she was wanted on an outstanding warrant, as well as the drugs found on her person pursuant to the subsequent search incident to her arrest on that warrant, should have been suppressed. We do not reach the merits of whether the discovery of the outstanding warrant was an intervening circumstance that attenuated any "fruit of the poisonous tree" taint from the illegal police conduct because we hold that the initial stop was consensual.[3]

"On appeal from a trial court's denial of a motion to suppress, we must review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it." Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, "we review *de novo* the trial court's

---

[3] This issue would be one of first impression in the Commonwealth. This Court has previously, in *dicta* in an unpublished opinion, addressed this issue, but did so only in passing because it ultimately held that the initial encounter between the appellant and the police officers was lawful. Venable v. Commonwealth, No. 0833-07-2 (Va. Ct. App. Dec. 30, 2008). Other jurisdictions which have analyzed this issue have continuously turned to the analysis in United States v. Green, 111 F.3d 515 (7th Cir. 1997), with the majority of those jurisdictions then applying the three factors set forth in Brown v. Illinois, 422 U.S. 590, 603-04 (1975), in determining that there was sufficient attenuation from the discovery of an outstanding arrest warrant to dissipate the taint of an unlawful seizure on evidence seized after the lawful arrest. However, because we agree with the trial court that Muhammad's encounter with the police in this case was consensual, we need not consider whether or not the discovery of an outstanding warrant for Muhammad falls within the "fruit of the poisonous tree" doctrine of the exclusionary rule.

application of legal standards . . . to the particular facts of the case." McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc) (citing Ornelas, 517 U.S. at 699). "'Ultimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed *de novo* on appeal.'" Ramey v. Commonwealth, 35 Va. App. 624, 628, 547 S.E.2d 519, 521 (2001) (quoting Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998)).

"The Fourth Amendment . . . protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Johnson v. Commonwealth, 26 Va. App. 674, 682, 496 S.E.2d 143, 147 (1998) (citation omitted). A police-citizen encounter is either consensual, brief investigatory or "Terry" stop, or an arrest. McGee, 25 Va. App. at 198, 487 S.E.2d at 261. A consensual encounter is not a seizure, and does not need to be based on any suspicion of the individual's involvement in wrongdoing because it does not implicate the Fourth Amendment. Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citation omitted); McGee, 25 Va. App. at 198, 487 S.E.2d at 261. Likewise, "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." INS v. Delgado, 466 U.S. 210, 216 (1984).

> "There is no 'litmus test' for determining whether an encounter is consensual or constitutes an illegal seizure. If, however, a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment."

Bandy v. Commonwealth, 52 Va. App. 510, 516, 664 S.E.2d 519, 522 (2008) (quoting Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003)).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of

authority,' terminates or restrains his freedom of movement, . . . 'through means intentionally applied.'" Brendlin v. California, 551 U.S. 249, 254 (2007) (citations omitted). In determining whether a seizure has occurred,

> [v]arious factors have been identified as relevant . . . , including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003) (citations omitted); see also Montague v. Commonwealth, 278 Va. 532, 539, 684 S.E.2d 583, 587 (2009). "The decision whether the encounter was consensual must be made based on the totality of the circumstances." Harris, 266 Va. at 32, 581 S.E.2d at 209 (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

The Supreme Court of Virginia in its recent decision in Montague, held that a similar encounter between the police and Montague was consensual prior to discovery of outstanding arrest warrants. 278 Va. at 539, 684 S.E.2d at 587-88. In that case, the officers approached Montague and his companion in the parking lot of an apartment complex, asked him if he lived there, and when he replied that he did not, the officers obtained his identification information. Id. at 539, 684 S.E.2d at 588. Upon receiving the information, one of the officers contacted a police "dispatcher" to determine if there were any outstanding arrest warrants for Montague, and the dispatcher relayed that there were two outstanding warrants. Id. at 537, 684 S.E.2d at 586. The encounter lasted only two to three minutes, the officers did not engage in any show of force, nor did they use language that indicated to Montague he was required to stay. Id. at 539, 684 S.E.2d at 586. Montague remained about five feet away from the officers, and made no attempt to leave. Id. at 539-40, 684 S.E.2d at 588. Based on these facts and circumstances, the Supreme Court concluded that the encounter was consensual.

In this case, the encounter between Reid and Muhammad was consensual. Reid made no show of force or authority nor did she physically restrain Muhammad in any way during the encounter. Reid's gun remained in the holster the entire time, and only two officers were present with the group of five individuals. Reid spoke with the women while Schultz spoke with the men over by the truck, and then Schultz remained by the truck with the men, and the women stayed in front of the door to the store while Reid ran the information. Also, when Reid approached the group of women she spoke to them in a normal voice, and obtained their identification information. See Jones v. Commonwealth, 52 Va. App. 548, 556, 665 S.E.2d 261, 265 (2008) ("'[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.'" (quoting INS, 466 U.S. at 216)). Further, Reid obtained no identifications or documents from the individuals that she retained such that a reasonable person would have thought she was not free to leave until receiving them back. Lastly, although Reid did not verbally tell Muhammad she was free to leave, the interaction with Muhammad prior to her arrest was brief in that it lasted only five to seven minutes.

Muhammad argues that she was seized when Reid did not permit one of the women to leave by asking her where she was going and if she was going to hang out with them. However, the interaction between Reid and the other woman has no bearing on whether or not the encounter with Muhammad was consensual. Muhammad did not tell the other woman that she had to return, nor did she chase her down. The words spoken by Reid did not turn the interaction with the other woman into a seizure, nor did they convert Muhammad's consensual encounter into a seizure. The same applies to the words spoken by Reid to the male by the truck to "sit still." They did not create a seizure of the male, nor did they transfer to create a seizure of Muhammad.

Under these circumstances, Reid did not violate Muhammad's Fourth Amendment rights because the encounter was consensual. Therefore, we hold that the trial court did not err in denying Muhammad's motion to suppress.

<u>Affirmed.</u>