UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Ortiz and Lorish
Argued by videoconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 0082-22-1                    JUDGE LISA M. LORISH
                                                  JUNE 14, 2022
TONY CURTIS SPIVEY


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Andrea Booden, Senior Assistant Commonwealth Attorney, for
appellant.

Rebecca C. Lawrence (Lawrence Law PLLC, on brief), for appellee.


By Code § 19.2-398, the Commonwealth appeals the decision of the Circuit Court of the

City of Newport News to grant Tony Curtis Spivey's motion to suppress. On brief, the

Commonwealth assigned error to the trial court's factual determination that an encounter

between Spivey and a police officer, which started as a consensual conversation, was no longer

consensual when the officer pointed at Spivey's pocket. At oral argument, the Commonwealth

argued that the trial court made an error of law by considering whether Spivey *subjectively* felt

free to leave the encounter, rather than considering whether a reasonable person *objectively*

would have felt free to do so. On the former point, we are constrained by our standard of review

to uphold the factual conclusions of the trial court. Because the Commonwealth procedurally

defaulted the latter argument, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We must view the "evidence in the light most favorable to [the defendant], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991).

Spivey, a sixty-year-old Black man, was walking with an elderly Black man in broad daylight in a high crime area in Newport News. Officer Delphin of the Newport News Police Department had received a call from dispatch that a Black man, who was approximately six feet, one inch tall and wearing a checkered coat, was suspected of having cocaine in the area where the two men were walking.[1] Seeing the two men, Officer Delphin pulled over to the curb, quickly got out of his patrol car and, with the door still open, yelled across the street to Spivey, "What's going on, man?" Officer Delphin then walked towards Spivey and his companion, meeting them in the middle of the street. He asked if they were all right because the older man seemed to be having trouble walking. The men explained that because it was Spivey's birthday, they were "dressed up nice." Spivey and his companion tried to continue walking across the street, the older man saying, "I gotta get out of the street," but Officer Delphin continued to talk to them there and asked if they lived in the area. They replied affirmatively.

At this point, Spivey received a phone call and began speaking on his phone. Still in the middle of the road, Officer Delphin asked if he could see Spivey's identification card. Spivey provided the card, and Officer Delphin called in his driver's license number to dispatch. Officer Delphin then said both men should move out of the middle of the road so they would not get hit.

While both men were standing right by Officer Delphin's patrol car, Officer Delphin told Spivey that he stopped to speak to them because the older man was "walking really slow," and

---

[1] Spivey is five feet, ten inches tall and was wearing matching gray camouflage jacket and pants.

he wanted to make sure "he wasn't having some type of medical problem." Spivey said he was walking to his car to give the older man a ride and pointed to a nearby vehicle. Officer Delphin then asked for Spivey's identification a second time to write down his information "real quick." Spivey and the other gentleman both mentioned that they had had a previous encounter with Officer Delphin.

As Officer Delphin was still holding onto Spivey's identification, writing down his information, Spivey said, "Look like somebody wanted, man, for you to do all that." Officer Delphin replied, "I'm just asking for your information, that's all man." Officer Delphin then returned his identification and asked how to pronounce Spivey's name and whether he had anything illegal on him. Spivey said no, and then said, "Why you tryin' to search me?" Officer Delphin said that he was only asking whether Spivey had anything illegal on him, and Spivey said no. Officer Delphin persisted and said: "The cigarette box you put in your pocket, there's nothing in there?" Officer Delphin explained that he saw Spivey put the box in his pocket when he first pulled over. In response to the question, Spivey answered no, while feeling around his pockets without locating the cigarette box.

While this conversation was taking place, a second police vehicle pulled up behind Spivey, on the opposite side of the road from the first car. Officer Delphin persisted again: "It's in your jacket pocket." Spivey continued to not locate the box. Officer Delphin continued his efforts: "You put it in your jacket pocket right there." After Spivey again failed to pull out the box, Officer Delphin, standing close to Spivey, pointed directly at his left pocket and said, "This one right there." At this point, the officer in the other patrol car was walking across the street, coming up behind Spivey. Spivey finally pulled out the box, with one officer standing right behind him, hand on his service weapon, while Officer Delphin simultaneously reached for the box asking, "May I see it?"

Inside the box, Officer Delphin found bundles of green glassine baggies that contained powder packaged in a manner commonly used to distribute narcotics. Officer Delphin then questioned Spivey, who admitted that he sold heroin for $10 per package.

Spivey was indicted for possession of a Schedule I or II controlled substance with the intent to distribute and possession of a Schedule I or II controlled substance by a grand jury. Spivey filed a written motion to suppress evidence of the contents of the cigarette box as well as the statements he made after Officer Delphin found the drugs. The Commonwealth filed a written response. The trial court held a hearing on the motion, during which Officer Delphin testified and the body camera footage of the encounter was played. After reviewing this evidence and hearing the arguments of the parties, the court granted the motion to suppress. The trial court explained that the encounter was at first consensual, but that the nature of the interaction shifted once Spivey asked why the officer wanted to search him and the officer made the "pointing motion" to show that "what he was interested in was that cigarette package." Under the "totality of the circumstances," the court found "there was a detention without reasonable articulable suspicion" and granted the motion to suppress.

The Commonwealth noted its pretrial appeal of the circuit court's order under Code § 19.2-398.

ANALYSIS

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019). "Police-citizen confrontations generally fall into one of three categories." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (*en banc*). These include (1) "consensual encounters which do not implicate the Fourth Amendment," (2) "brief investigatory stops, commonly referred to as '*Terry*'[2] stops," and

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

(3) arrests or searches based on "probable cause to believe that a crime has been committed by the suspect." *Id.*

The Commonwealth contends that the encounter here was consensual, falling into the first category.

> There is no "litmus test" for determining whether an encounter is consensual or constitutes an illegal seizure. If, however, a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment.

*Harris v. Commonwealth*, 266 Va. 28, 32 (2003) (citation omitted) (citing *United States v. Mendenhall*, 446 U.S. 544, 558-59 (1980)).

First, we must address some procedural matters. For the first time at oral argument, the Commonwealth argued that the trial court made an error of law by applying a subjective standard—focused on whether Spivey felt free to terminate the encounter—rather than consider whether a "reasonable person" would have felt free to decline the request. On brief, however, the Commonwealth assigned error only to the following: "The Trial Court clearly erred when it found an officer seized Appellee by pointing at Appellee's pocket during a consensual encounter." Rule 5A:20(e) requires "that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017).[3] We find this argument was defaulted. *See id.*

---

[3] The Commonwealth did briefly mention that the trial court "held Appellee's subjective belief was reasonable" and a few paragraphs later stated that "[t]he test for voluntariness of consent during consensual encounters is an objective one," but the opening brief lacks any argument that the trial court erred as a matter of law by applying the wrong standard. At oral argument before this Court, counsel for the Commonwealth admitted as much. We appreciate counsel's candor with the Court but conclude that Rule 5A:20(e) requires more.

Spivey raises a different procedural issue, arguing that this Court should dismiss this appeal because the Commonwealth petitioned for pretrial appeal too soon—only four days after it filed the notice of transcript in the circuit court. Code § 19.2-402(B) states:

> The petition for a pretrial appeal shall be filed with the clerk of the Court of Appeals *not more* than 14 days after the notice of transcript or written statement of facts required by § 19.2-405 is filed or, if there are objections thereto, within 14 days after the judge signs the transcript or written statement of facts.

(Emphasis added.) This provision does not require the Commonwealth to wait a certain period of time after providing notice about the transcript before the Commonwealth may file its petition for appeal. Nothing prevented Spivey from filing objections to the transcript and alerting this Court to the same in his brief.

Turning to the merits, the Commonwealth's assignment of error questions the trial court's conclusion that what began as a consensual encounter, was no longer consensual by the time Officer Delphin pointed at Spivey's pocket. "The determination of whether a person has been seized within the meaning of the Fourth Amendment presents a mixed question of law and fact[.]" *Montague v. Commonwealth*, 278 Va. 532, 537 (2009). In reviewing Fourth Amendment questions like this one, we review a trial court's factual findings for clear error and review its legal conclusions *de novo*. *Id.* There are many factual determinations relevant to whether an encounter was consensual, and for all of these, we afford the trial court great deference. *Malbrough v. Commonwealth*, 275 Va. 163, 171 (2008).

> There is good reason for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated. Moreover, they involve consideration of nuances such as tone of voice, facial expression, gestures and body language seldom discernable from a printed record. The controlling inquiry is the effect of such matters on a reasonable person in the light of all the surrounding circumstances.

*Id.* We are "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." *Matthews v. Commonwealth*, 65 Va. App. 334, 341 (2015) (quoting *McGee*, 25 Va. App. at 198).

Here, we cannot say that the trial court erred by concluding that the initially consensual encounter between Spivey and Officer Delphin crossed over to a seizure. The Supreme Court of Virginia has explained that there is no "litmus test" for determining whether an encounter is consensual or a seizure, and listed some non-exclusive factors relevant to the totality of the circumstances:

> [the] threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents by an officer, and whether a citizen was told that he or she was free to leave.

*Harris*, 266 Va. at 32.

We have affirmed a trial court's determination that when an officer merely asked for a person's identification, even for investigatory purposes, that was not enough to show the person was seized without more. *Jones v. Commonwealth*, 52 Va. App. 548, 556 (2008). ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984))). On the other hand, we explained that when an officer explicitly tells the defendant that he is suspected of a crime, that is strong reason to believe that a reasonable person would not have felt free to go on his way. *McGee*, 25 Va. App. at 200.

The trial court heard evidence from Officer Delphin and also reviewed the body camera video of the encounter between Officer Delphin and Spivey.[4] The totality of the circumstances here included the fact that a second police officer arrived during Officer Delphin's interaction with Spivey and that this officer immediately parked and walked up directly behind Spivey while Officer Delphin was speaking to him. Indeed, this second officer had his hand on his service weapon when Spivey pulled out the cigarette box and Officer Delphin reached for the box while asking, "May I see it?" He had taken his identification card not once, but twice, and written down his information. Officer Delphin had doggedly asked about Spivey's cigarette box, not once, or twice, but at least three times before Spivey finally removed it from his pocket. Officer Delphin never told him he was free to go. We cannot say the trial court's factual findings were plainly wrong or without evidence to support them, or that the court's ultimate conclusion was in error.

CONCLUSION

For these reasons, we affirm the circuit court's decision granting the motion to suppress.

*Affirmed*.

---

[4] Our Court owes "deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe much as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). "On appellate review, [we] view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Id.*