PRESENT: All the Justices

RUSSELL MAURICE JONES

OPINION BY
v.    Record No. 090979    JUSTICE LEROY F. MILLETTE, JR.
February 25, 2010
COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether off-duty law enforcement officers, privately employed by an apartment complex to protect its property from trespassers, unlawfully seized a defendant in violation of the Fourth Amendment, when the defendant complied with the officers' request to accompany them to the rental office to issue a notice barring the defendant from the property.

BACKGROUND

The material facts are largely undisputed. Deputy Jeffrey Feighner and Deputy Tom Mannes of the Richmond City Sheriff's Office were employed as off-duty private security guards for an apartment complex, "hired to identify people who come on to the property, and determine if they are residents and are able to be on the property."

Both deputies were wearing dark brown pants and a short sleeve khaki brown polo shirt with an embroidered Sheriff's badge over the left breast. "Richmond Sheriff's Office" was written around the badge, and "Sheriff's Office" appeared across

the back of the shirt.  The deputies had their firearms holstered on their hips.

At approximately 2:15 a.m., the deputies observed a sedan pull into the apartment complex and park in front of an apartment building.  Russell Maurice Jones got out from the driver's side and headed toward the building.  Shortly thereafter, Jones returned to the sedan, opened the trunk and looked through it for 20 to 30 seconds, then headed back to the same apartment building.  Deputy Feighner had not previously encountered Jones and approached him "to see the reason for him being on the property."

When Deputy Feighner asked Jones for identification, Jones replied that he did not have identification, but provided Deputy Feighner with his name, date of birth, and social security number.  When Deputy Feighner asked Jones his reason for being on the property, Jones "stated that [his] baby daughter was sick and it was an emergency."  When Deputy Feighner asked Jones what apartment they were staying in, Jones pointed in the general direction of the building, but could not provide a building or apartment number.  Deputy Feighner did not testify as to any objection by Jones when he was asked "if it would be okay to pat him down [for weapons]."  No weapons or anything illegal was recovered and the deputies did not search the car Jones had been driving.

2

Deputy Feighner testified that he asked Jones to go to the rental office with them "to bar him from the property, fill out the paperwork." When asked whether he ordered Jones to come with him to fill out the paperwork, Deputy Feighner responded, "No. He was cooperative." According to Deputy Feighner, Jones did not give him any "indication physically" that Jones did not want to go with him, and Jones "did voluntarily come to the rental office." However, Deputy Feighner testified that "if [Jones] was to try to leave the scene, we would have detained him."

At the rental office, while Deputy Mannes began processing paperwork for the letter barring trespass, Deputy Feighner contacted the Richmond Sheriff's jail annex to check if Jones had any warrants out for his arrest and also to check Jones' driver's transcript. Deputy Feighner learned that Jones did not have any outstanding warrants, but his driver's license was revoked. Deputy Feighner testified that the Department of Motor Vehicles check did not prolong their stay in the rental office beyond what it would have been for Deputy Mannes to complete the paperwork barring trespass. After Deputy Feighner learned that Jones' driver's license was revoked, he handcuffed Jones and placed him under arrest in the rental office.[*]

---

[*] Deputy Feighner testified that they "took him into custody at . . . 2:25 in the morning."

Jones was indicted for "Driving While an Habitual Offender – Subsequent Offense," in violation of Code § 46.2-357(B)(3). Jones filed a motion to suppress any evidence resulting from what he contended was an unlawful seizure, conducted without a warrant and without reasonable articulable suspicion to believe he had committed a crime.

The circuit court overruled Jones' motion to suppress, finding that Jones consented to go to the rental office, as there was "no evidence of any coercion or overbearing [Jones'] will in any way. [The deputies] said it took no time at all. Very limited intrusion time-wise." The circuit court also found that "there w[ere] no guns drawn, no force involved, no coercion in any way. [Jones] cooperated. The officers were engaged in [a] private off-duty capacity, privately engaged person[s]."

Jones filed a motion for reconsideration. The circuit court denied Jones' motion to reconsider and held that

> [Jones was] asked to accompany the officers to the rental office, so that they could proceed with checking the list of those barred and giv[e] [him] a notice that [he was] barred from the premises. That was all the action that they intended to take. They didn't just pat him down, but they asked for permission to do that. . . . It was ten minutes from the encounter to the rental office, what they determined at the time, which was a very brief stop.

The circuit court reiterated its conclusion that Jones was not seized in violation of the Fourth Amendment. The circuit court

4

also stated that, "[i]n this case, the Court doesn't reach the issue of the state action in this ruling."

Jones entered a conditional guilty plea to the charge of driving while an habitual offender – subsequent offense, reserving his right to a review of the circuit court's denial of his motion to suppress. Code § 19.2-254. Jones appealed his conviction to the Court of Appeals, which granted his petition, heard oral argument, and affirmed his conviction in an unpublished opinion. Jones v. Commonwealth, Record No. 0968-08-2 (April 21, 2009). We awarded Jones this appeal.

### DISCUSSION

On appeal to this Court, Jones assigns error to the circuit court's holding that state action was not involved when off-duty deputies engaged in police business while wearing their uniforms and displaying their badges of authority, and to the Court of Appeals' failure to address the issue of state action. Jones also assigns error to the circuit court's denial of his motion to suppress, and to the Court of Appeals' holding that the encounter between Jones and the deputies was consensual. Because we affirm the Court of Appeals' determination that the encounter was consensual, for purposes of this opinion, we assume without deciding that there was state action. We therefore will discuss only those arguments pertaining to

whether Jones' encounter with the deputies was consensual or an illegal seizure in violation of his Fourth Amendment rights.

Jones argues that he was not free to leave from the moment the deputies instructed him that he needed to accompany them to the rental office to effect his barment from the property. Jones contends that when the armed, uniformed law enforcement officers indicated that they were going to bar him, then asked him to come to the rental office to effectuate his barment, no reasonable person in Jones' position would have felt free to leave. According to Jones, a reasonable person in that situation would go along with the barment paperwork only because he felt he had no choice. Therefore, Jones argues that since the encounter was not consensual and was not supported by reasonable suspicion, the officers' seizure of Jones violated the Fourth Amendment.

The Commonwealth argues that the circuit court's factual findings supporting a consensual encounter were not plainly wrong or unsupported by the evidence. The Commonwealth maintains that the record demonstrates "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." United States v. Drayton, 536 U.S. 194, 204 (2002). The Commonwealth asserts that although the deputies were armed and wearing

6

clothing identifying them as members of the Sheriff's Department, those facts did not transform the consensual encounter into a seizure under the Fourth Amendment. Thus, according to the Commonwealth, Jones was not seized within the meaning of the Fourth Amendment.

The Fourth Amendment to the Constitution of the United States provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A defendant's claim that he or she has been seized in violation of the Fourth Amendment presents a mixed question of law and fact that is reviewed de novo on appeal. Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003); McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001); Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

We give deference to the circuit court's factual findings and inferences drawn from those facts, but independently determine whether the manner in which the evidence was obtained satisfies the Fourth Amendment. McCain, 261 Va. at 490, 545 S.E.2d at 545; Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).

In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. . . . [A]n appellate court "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."

Malbrough v. Commonwealth, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008) (quoting Reittinger, 260 Va. at 236, 532 S.E.2d at 27). However, we will review the trial court's application of the law de novo. Id.

The determination whether an encounter is consensual or is an illegal seizure in violation of a defendant's Fourth Amendment rights is not governed by a "litmus test," and requires consideration of all the circumstances surrounding the encounter. Ohio v. Robinette, 519 U.S. 33, 39 (1996); Florida v. Bostick, 501 U.S. 429, 439 (1991); Harris, 266 Va. at 32, 581 S.E.2d at 209. "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual" and no reasonable suspicion is required to justify the encounter. Dickerson v. Commonwealth, 266 Va. 14, 17, 581 S.E.2d 195, 197 (2003) (quoting Bostick, 501 U.S. at 434); Reittinger, 260 Va. at 236, 532 S.E.2d at 27. The

8

"reasonable person" test is an objective test and presumes an innocent person. <u>Malbrough</u>, 275 Va. at 169, 655 S.E.2d at 4.

Law enforcement officers may approach a citizen in public places and engage in consensual encounters involving questioning of the citizen, if the citizen is willing to listen, without violating the Fourth Amendment's prohibition of unreasonable seizures. <u>Drayton</u>, 536 U.S. at 200. A consensual encounter is not transformed into a seizure merely by the presence of police officers who are in uniform and armed. <u>Id.</u> at 204-05; <u>Dickerson</u>, 266 Va. at 18, 581 S.E.2d at 197. "The consensual encounter becomes a seizure '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " <u>Malbrough</u>, 275 Va. at 169, 655 S.E.2d at 4 (quoting <u>Bostick</u>, 501 U.S. at 434).

Courts have previously listed factors that are relevant in determining whether a seizure has occurred, which include the number of police officers present, the display of weapons by an officer, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave. <u>Robinette</u>, 519 U.S. at 36; <u>Florida v. Royer</u>, 460 U.S. 491, 504 (1983); <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980); <u>Harris</u>, 266 Va. at 32, 581 S.E.2d at 209. However, "what constitutes a

9

restraint on liberty prompting a person to conclude that he [or she] is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." Michigan v. Chesternut, 486 U.S. 567, 573 (1988).

The issue presented to the circuit court by Jones' motion to suppress was whether, when the deputies asked Jones to accompany them to the rental office to effect his barment from the property, the original consensual encounter became a seizure, such that a reasonable person, under all the surrounding circumstances, would not have felt free to disregard the deputies and continue about his business.

The circuit court, in considering the testimony of the witnesses appearing at the suppression hearing, assessed all of the evidence. The circuit court determined whether, under all of the circumstances, the encounter was transformed from originally consensual to a seizure because a reasonable person would believe he was not free to leave. The circuit court concluded that the consensual encounter was not transformed into a seizure by the deputies' request.

In Mendenhall, the United States Supreme Court held that the Fourth Amendment had not been violated when a woman went with federal agents to the Drug Enforcement Administration office since the woman had not been told that she had to go to

10

the office, but had been simply asked if she would accompany the agents, and there had been neither threats nor any show of force.  446 U.S. at 557-58.

In this case, the deputies did not demand that Jones accompany them to the rental office.  Jones was merely asked if he would accompany the deputies, and he was cooperative with their request.  There was no evidence that either deputy brandished his weapon, physically touched Jones, used a tone of voice, language or body language indicating that Jones was not free to leave, or that compliance with their request to accompany them to the rental office was compelled.  There was no evidence of repeated requests by the deputies.  Although the deputies did not affirmatively inform Jones that he was free to leave, that fact alone is not sufficient to remove the consensual nature of the encounter.  Robinette, 519 U.S. at 39-40; Mendenhall, 446 U.S. at 555; Harris, 266 Va. at 33, 581 S.E.2d at 210.  Additionally, the subjective intent of the deputies that if Jones refused, they would have compelled him to accompany them is not relevant for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 813 (1996)(explaining that "[s]ubjective intentions" of investigating officers "play no role in ordinary . . . Fourth Amendment analysis").

The deputies, by asking Jones to accompany them to the rental office, sought information regarding Jones' identity and

his authority to be on the property, consistent with their purpose of enforcing the no trespassing policy of the apartment complex. The notification process employed by the deputies was required by their private employer and did not implicate restraint of Jones' liberty or the need to restrain. Dickerson, 266 Va. at 18, 581 S.E.2d at 197.

The circuit court determined that the encounter was "very brief," and its purpose was to check the barment list and give Jones notice that he was barred from the property. The court's determination included a finding that no guns were drawn, that there was no force or coercion in any way, and that Jones cooperated. The circuit court, after analyzing all the circumstances, observing the witnesses, and making factual findings, concluded that the deputies' actions did not constitute a seizure. The record amply supports the circuit court's factual findings, and the evidence supports the circuit court's conclusion that the encounter between Jones and the deputies was consensual.

## CONCLUSION

For the foregoing reasons, we hold that Jones has failed to carry his burden of showing that the circuit court's findings of fact were plainly wrong or unsupported by the evidence, or that the trial court committed reversible error. We find no error in the application of the law by the circuit court or by the Court

of Appeals.  We will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>
