COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Fulton and Friedman


JON'TA SHON GERMAINE RAMSEY

MEMORANDUM OPINION* BY
v.      Record No. 1096-21-1      JUDGE FRANK K. FRIEDMAN
NOVEMBER 9, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
John W. Brown, Judge[1]

(Sanita Swift Sherard, on brief), for appellant. Appellant submitting
on brief.

(Jason S. Miyares, Attorney General; David M. Uberman, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.


Jon'Ta Shon Germaine Ramsey appeals his conviction for possession of a firearm by a

violent convicted felon, in violation of Code § 18.2-308.2. He argues that the trial court erred by

denying his motion to suppress and that the evidence was insufficient to uphold his conviction.

We affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

standard requires us to "discard the evidence of the accused in conflict with that of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Stephen J. Telfeyan presided over the pretrial motion to suppress hearing. Judge
John W. Brown presided over the jury trial and sentencing.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

After a grand jury indicted appellant for possession of a firearm by a violent convicted felon, appellant moved to suppress the firearm, asserting that the police violated his Fourth Amendment rights by illegally searching his vehicle.

Terry Kelly is appellant's brother. He was driving a Mazda with a passenger, Griffin, and pulled into a gas station mini-mart. Appellant pulled his Mustang in beside Kelly's Mazda.

Chesapeake Police Detective Ring testified at the suppression hearing that he was running license plates of cars leaving a gang member's funeral. Detective Ring ran the license plate for the Mazda belonging to Kelly and discovered that Kelly had a warrant out for his arrest. Detective Ring relayed this information to Chesapeake Police Officer Gosnell. Detective Ring ran appellant's tags as well and determined that his driver's license was suspended but did not convey that information to Officer Gosnell until later.

Officer Gosnell parked behind Kelly's Mazda without blocking appellant's vehicle. While Officer Gosnell spoke to Kelly, his passenger, Griffin, got out of Kelly's car and put a bag in the back seat of appellant's car. Officer Gosnell detained Kelly while he checked Kelly's information and confirmed the warrant. Appellant asked Officer Gosnell what was happening, and Officer Gosnell responded that Kelly had a warrant. Appellant then asked whether he could drive Kelly's car away, and Officer Gosnell told him that he could not take the car until after the police had verified Kelly's warrant.

Kelly asked appellant and Griffin to wait for him. Appellant then asked Officer Gosnell for permission to stay in the area; Officer Gosnell responded that "if y'all want to hang out for a

second, I don't mind." Officer Gosnell testified that he never told appellant that he had to stay in the area or that he was not free to leave. He also testified that he never took appellant's license or registration and that his focus was on Kelly for the entire encounter.

Chesapeake Police Officers Migani and Roman arrived while Officer Gosnell was investigating Kelly. Officers Migani and Roman spoke with appellant and Griffin in a conversational tone about topics unrelated to the police investigation. They did not take appellant's driver's license or vehicle registration and did not block his vehicle. When appellant asked if he could get something out of his Mustang, Officer Migani told him, "you're good, you're good all day." Griffin and appellant each walked away, made phone calls, and bought refreshments from the gas station market with no interference from any officer. Griffin ultimately left the scene. Officer Migani testified that Griffin walked away entirely undisturbed.

At one point, Detective Ring drove up and told appellant that his driver's license was suspended. Appellant testified that he did not feel free to leave at that point, and so he called his girlfriend to see if she could come drive his car away. Officer Migani continued to make small talk with appellant. When Chesapeake Police K9 Officer Hills arrived, Hills told appellant that his dog was trained to alert to marijuana, cocaine, heroin, methamphetamine, and ecstasy and that his dog was going to sniff around appellant's car. Appellant admitted to smoking marijuana earlier in the day. Officer Hills responded that he was not concerned about that and asked appellant to step away from the car so that the dog did not bite appellant. Appellant testified that he told Officer Hills that he felt like he was being detained and asked the officer why he was being detained, but Officer Hills "wasn't trying to answer [his] question," focusing instead on "trying to conduct the free air sniff." Although that interaction is not included on any of the body camera footage submitted at the hearing or at trial, Officer Migani's body camera footage shows that while Officer Hills was conducting the dog sniff, appellant made a phone call, during

which he stated, "I need you to come get me." The video then shows appellant turn to Officer Migani to say, "why am I being stopped? I feel like y'all are detaining me with him." Officer Migani told appellant that she did not know anything about that.

The dog sniffed around the Mustang in a counterclockwise circle and alerted by showing excitement and making noise. Officer Gosnell then detained and handcuffed appellant, who admitted to having marijuana in his pocket. The officers searched appellant's car and found a firearm in the back seat pocket.

Appellant argued that the officers lacked reasonable suspicion to detain him and conduct a dog sniff.[2] The trial court opined that, based on the demeanor and actions of appellant and the officers and appellant's apparent freedom of movement around the scene, appellant "had every opportunity to leave" and "remained there at [his] own free will." Accordingly, the court concluded that appellant was not detained and denied appellant's suppression motion.

At the September 2021 jury trial, the officers provided testimony that was substantially similar to their suppression hearing testimony. Detective Ring additionally testified that he spoke with appellant after officers discovered the firearm. After Detective Ring read appellant his *Miranda*[3] rights, appellant stated that the gun belonged to his girlfriend and that she left it in the car. Officer Gosnell and Officer Hills testified that they searched appellant's car and found a firearm with a magazine inside in the back map pocket. Ramsey also told Officer Gosnell that the gun belonged to his girlfriend and that she often leaves the gun in appellant's car.

---

[2] We note that, while appellant made these arguments in the circuit court, his brief on appeal devotes one paragraph to this issue and argues simply that officers improperly "extended their detention of Appellant by conducting a K-9 free air 'sniff' on his vehicle." As explained below, we concur with the trial court's determination that appellant was free to leave the scene until the dog alerted on his vehicle.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

The Commonwealth presented evidence that there was a fingerprint on the magazine inside the firearm that matched appellant's left thumbprint. Griffin's fingerprint was not on the firearm or magazine. Appellant moved to strike the evidence at the conclusion of the Commonwealth's case, which the trial court denied.

Appellant testified in his own defense and provided substantially similar testimony to that provided at the suppression hearing. He testified additionally that the firearm belonged to his girlfriend and that he did not know why his fingerprint was on the magazine but that he might have moved the magazine if he saw it in the apartment he shared with his girlfriend.

Appellant did not renew his motion to strike after his testimony. After closing arguments, the jury convicted appellant of possession of a firearm by a violent convicted felon, and the trial court sentenced him to five years' imprisonment. Appellant did not move to set aside the verdict, and this appeal followed.

ANALYSIS

I. Motion to Suppress

Appellant first asserts that the trial court erred by denying his suppression motion. "When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and 'will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'" *Taylor v. Commonwealth*, 70 Va. App. 182, 186 (2019) (quoting *Sidney v. Commonwealth*, 280 Va. 517, 520 (2010)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court

must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "In ruling on the propriety of a trial court's decision on a motion to suppress, the appellate court considers the evidence introduced at the suppression hearing and at trial." *Hairston v. Commonwealth*, 67 Va. App. 552, 557 n.1 (2017).

Searches and Seizures

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits only unreasonable searches and seizures." *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009) (citing *James v. Commonwealth*, 22 Va. App. 740, 745 (1996)). "Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Id.* (quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995)).

"Police officers are free to engage in consensual encounters with citizens, indeed, it is difficult to envision their ability to carry out their duties if that were not the case." *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008). "Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry*[4] stops, and (3) highly intrusive arrests and searches founded on probable cause." *Middlebrooks v. Commonwealth*, 52 Va. App. 469, 476 (2008) (alteration in original) (quoting *Blevins v.*

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Commonwealth*, 40 Va. App. 412, 420-21 (2003)).  The trial court, here, found that the interaction between appellant and the police was a consensual encounter.

<u>Consensual Encounters and The Fourth Amendment</u>

"Consensual encounters '"need not be predicated on any suspicion of the person's involvement in wrongdoing," and remain consensual "as long as the citizen voluntarily cooperates with the police."'" *Blevins*, 40 Va. App. at 421 (quoting *Payne v. Commonwealth*, 14 Va. App. 86, 88 (1992)).  "The determination whether an encounter is consensual or is an illegal seizure in violation of a defendant's Fourth Amendment rights is not governed by a 'litmus test,' and requires consideration of all the circumstances surrounding the encounter." *Jones v. Commonwealth*, 279 Va. 521, 528 (2010).  The Supreme Court of Virginia has explained "an encounter between the police and a citizen does not constitute a seizure unless, taking into account all the circumstances of the encounter, a 'reasonable person would . . . believe[] that he was not free to leave.'" *Montague v. Commonwealth*, 278 Va. 532, 539 (2009) (alterations in original) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

"Courts have previously listed factors that are relevant in determining whether a seizure has occurred, which include the number of police officers present, the display of weapons by an officer, [and] physical contact between an officer and a citizen . . . ." *Jones*, 279 Va. at 528.  Additionally, "an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave" are factors to consider. *Id.* at 528-29.

A reasonable person in appellant's position would have felt free to leave before Detective Ring informed him that his driver's license was suspended.  Indeed, before that point, appellant asked Officer Gosnell for permission to remain at the scene.  However, once Detective Ring arrived and informed appellant that his license was suspended, appellant testified that he no

longer felt free to leave. Thus, the question is whether a reasonable person in appellant's situation would have felt free to leave the scene at that point. While appellant's decision to remain at the scene with police was likely at least partially influenced by his brother's detention, "[w]e have said before that the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

It is true that appellant likely would not have felt free to drive away in full view of multiple police officers who knew his driver's license was suspended. But the relevant inquiry is whether a reasonable person would have felt free to leave, not whether they would have felt free to leave using a specific transport. Using the *Jones* factors, we conclude that a reasonable person would have felt free to "ignore the police presence and go about his business." *Id.* Although many officers were present, *Jones*, 279 Va. at 528, the focus of their investigation was on Kelly, not appellant. None of the officers displayed a weapon or made physical contact with appellant. *Id.* The officers did not retain any of appellant's documents, *id.* at 529, because they never requested that appellant provide any documents. Nor did any of the officers attempt to restrict his movement as he walked around the scene talking on his cell phone. *Mendenhall*, 446 U.S. at 553 ("We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.").

Officer Migani's tone was conversational, and she discussed topics unrelated to any police investigation. *Jones*, 279 Va. at 529. Detective Ring's tone was less conversational, but the body camera footage reveals that he said little other than informing appellant that his driver's

license was suspended. When appellant admitted to smoking marijuana earlier that day, Officer Hills told him that he was not concerned about that. And none of the officers told appellant that he could not leave, that they were investigating him for any crime, or that they intended to arrest or charge him for driving on a suspended license. *See id.* ("Although the deputies did not affirmatively inform Jones that he was free to leave, that fact alone is not sufficient to remove the consensual nature of the encounter.").

Finally, the use of the drug dog does not affect the outcome of our analysis. Officer Hills did not make physical contact with appellant or try to restrict his movement in any way after telling him the dog was going to sniff his car. Though Officer Hills asked appellant to move away from the vehicle, appellant himself testified that this was because the officer did not want appellant to be in danger from the dog. There is no evidence that any of the other factors described in Jones—display of weaponry, the officers' language or tone of voice, or retention of appellant's documents—changed based on the decision to have the dog sniff appellant's vehicle. Nor is there evidence that appellant was instructed to remain at the scene once the dog arrived or began its work. In fact, appellant called his girlfriend while the dog was being deployed and said, "I need you to come get me." This statement indicates that appellant did feel free to end the police encounter and go about his business. Moreover, any suggestion that the dog's free air sniff converted the incident into an illegal search is contrary to Virginia law. *Sanders v. Commonwealth*, 64 Va. App. 734, 753 (2015) ("The law is well established that a canine sniff, standing alone, is not a search for purposes of the Fourth Amendment."). We conclude that, from the totality of the circumstances, the police conduct in this case would not have caused a reasonable person to believe that he was not free to end the encounter. Accordingly, the trial court did not err by denying appellant's suppression motion.

## II. Sufficiency

Appellant challenges the sufficiency of the evidence supporting his conviction for possession of a firearm by a violent convicted felon. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

"In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case" if he does not "introduce evidence of his own." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (citing *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 84 (2010)). If a defendant presents new evidence after the trial court overrules his motion to strike, he "creates a new context" for assessing the sufficiency of the evidence. *McQuinn v. Commonwealth*, 20 Va. App. 753, 757 (1995) (*en banc*). Accordingly, to preserve the question of the sufficiency of the evidence, he must again move "to strike at the conclusion of all the evidence" or move "to set aside the verdict." *Bass*, 292 Va. at 33 (citing *Murillo-Rodriguez*, 279 Va. at 83-84 (holding that the defendant had not preserved a challenge to the sufficiency of the evidence because he failed to renew his motion to strike and did not move to set aside the jury's verdict after presenting his own evidence)); *see also Rompalo v. Commonwealth*, 72 Va. App. 147, 155 (2020) (holding that the defendant "waive[d] h[er] argument" on the motion to strike "at the conclusion of the Commonwealth's case-in-chief" by

- 10 -

presenting evidence on her own behalf).  Appellant's closing argument at the conclusion of all the evidence did not preserve his sufficiency of the evidence challenge because appellant was tried by a jury.  *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991) (*en banc*) ("[I]n a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law.").  Accordingly, appellant has not preserved appellate review of his sufficiency challenge.[5]  He does not invoke any of the exceptions to Rule 5A:18, and this Court does not do so *sua sponte*.  *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*).

## CONCLUSION

For the foregoing reasons, the conviction is affirmed.

*Affirmed.*

---

[5] We note, however, that appellant's fingerprint was on the gun, the gun was located in his car, and appellant indicated it was frequently in his car.