COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, AtLee and Malveaux
Argued at Norfolk, Virginia


ALLEN W. POULSON

v.      Record No. 1199-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RICHARD Y. ATLEE, JR.
DECEMBER 28, 2023


FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
W. Revell Lewis, III, Judge

S. Mario Lorello (Zoby & Broccoletti, P.C., on brief), for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S. Miyares, Attorney General, on brief), for appellee.


Under a written plea agreement, Allen W. Poulson entered a conditional guilty plea to one charge of misdemeanor driving while intoxicated ("DWI").  On appeal, he contends that the circuit court erred by denying his motion to suppress, arguing that he was seized when law enforcement spoke with and arrested him within the curtilage of his property and that he was not provided timely *Miranda*[1] warnings.  We find no merit to Poulson's arguments and affirm the circuit court's judgment.

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial."  *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

doing so, we discard any of Poulson's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

Just after midnight on December 23, 2021, Accomack County police received an anonymous call that a maroon pickup truck was stuck in a ditch on Guard Shore Road. The caller, who was later identified, was concerned that the driver might be intoxicated and possibly injured. The caller saw the driver throw bottles out of the truck window. He reported seeing another vehicle arrive and attempt to help remove the truck from the ditch. Poulson, the driver of the truck, also called 911 and stated that he had run off the road and into a ditch. He reported that he was not injured, did not require help, and had already called someone to help him extract the truck.

Nevertheless, Virginia State Trooper Flynn responded to the scene of the reported crash. There, he saw tire marks near the ditch, beer bottles on the ground, and damage to a culvert. Flynn and other officers drove to Poulson's house and saw Poulson's truck, which matched the description of the crashed vehicle the anonymous caller had provided, parked in Poulson's driveway. Furthermore, the truck's license plate was a custom vanity plate that read "Poulson." The front end of the driver's side was damaged, and there were beer cans in the bed of the truck. While the officers stood outside near the truck, Poulson exited his house and approached them. Poulson spoke to Flynn and acknowledged that he was the driver at the crash scene and that he struck the culvert. He explained that a deer had run in front of him and he swerved off the road.

Flynn testified that Poulson's speech was slurred and that he smelled of alcohol. Poulson admitted to Flynn that he had consumed "four or five beers [and] three to four shots" but denied drinking prior to the accident. Poulson agreed to perform field sobriety tests. It was "[v]ery very cold" out and Poulson wore only boxers and a tee-shirt, so Flynn told him to go get dressed. Poulson went back inside his house to put on more clothes while the officers waited outside.

- 2 -

Poulson returned outside and submitted to a preliminary breath test. The result was .121, above the legal limit. Flynn then arrested Poulson for DWI. A later blood analysis measured Poulson's blood alcohol concentration at .141%.

Poulson moved to suppress the evidence obtained during his interaction with the police, arguing that the police violated his Fourth Amendment rights by entering the curtilage of his home and questioning him and that he was unlawfully detained and questioned without being advised of his rights under *Miranda*. The circuit court denied the motion, and Poulson then entered his conditional guilty plea to DWI. This appeal followed.

## II. ANALYSIS

Poulson argues that the circuit court erred in denying his motion to suppress because the police seized him in violation of his Fourth Amendment rights and subjected him to custodial interrogation without the benefit of *Miranda* warnings.

### A. *Standard of Review*

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

B.  *Poulson consented to his interactions with the police, and no Fourth Amendment or* Miranda *violation occurred.*[2]

While the analyses as to whether an individual is "seized" for Fourth Amendment purposes and "in custody" under *Miranda* differ, an individual is neither when he voluntarily initiates, and continues, his encounter with law enforcement.  That is what occurred here.

"Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry*[3] stops, and (3) highly intrusive arrests and searches founded on probable cause."  *Middlebrooks v. Commonwealth*, 52 Va. App. 469, 476 (2008) (first alteration in original) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003), *aff'd*, 267 Va. 291 (2004)).  "'So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual' and no reasonable suspicion is required to justify the encounter."  *Jones v. Commonwealth*, 279 Va. 521, 528 (2010) (quoting *Dickerson v. Commonwealth*, 266 Va. 14, 17 (2003)).  "The 'reasonable person' test is an objective test and presumes an innocent person."  *Id*.  For a Fourth Amendment seizure to occur, the defendant must either be under some physical restraint by the police or have complied with a police officer's show of authority.  *See Woodson v. Commonwealth*, 245 Va. 401, 405 (1993) (finding no Fourth Amendment seizure when

---

[2] As a preliminary matter, Poulson argues that the police were unlawfully present on the curtilage of his residence.  Yet there is an implied license that permits law enforcement to briefly enter the curtilage of a home "in the hopes of speaking with a resident [a]bsent affirmative steps to rescind the invitation by the homeowner."  *Ingram v. Commonwealth*, 74 Va. App. 59, 69-70 (2021) (internal citation omitted).  At no point did Poulson tell the police to leave, refuse to speak to Flynn, or otherwise assert any expectation of privacy.  Nor did the interaction evolve into an unlawful seizure, given that Poulson voluntarily spoke with the police and the encounter remained consensual up to the point of Poulson's lawful arrest.  Accordingly, any argument that there was a Fourth Amendment violation based upon the interaction taking place on the curtilage of Poulson's home fails.

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

defendant failed to comply with order to show his hands); *Thomas v. Commonwealth*, 24 Va. App. 49, 54 (1997) (en banc) (finding no seizure at point when defendant stopped ahead of approaching a roadblock checkpoint).

Poulson's encounter with the police began consensually, and it remained so. He was not detained for purposes of the Fourth Amendment until after he voluntarily spoke with Flynn and submitted to the preliminary breath test. "Under the Fourth Amendment, any seizure of a person, no matter how brief, must have an objective justification related to law enforcement." *Montague v. Commonwealth*, 278 Va. 532, 538 (2009). But "a voluntary encounter between the police and a citizen does not constitute a seizure prohibited by the Fourth Amendment." *Id.* "Thus, even when the police do not have a reasonable suspicion that an individual may be engaged in criminal activity, they may approach that person and request information regarding the person's identity without violating the Fourth Amendment." *Id.* "As long as the police do not convey, by word or deed, that compliance with their request is mandatory, there is no requirement that these encounters be based on an objective or particularized suspicion regarding the person approached." *Id.* "If the person to whom the police questions are directed objectively 'remains free to disregard the questions and walk away,' there is no demonstrable restriction on the person's liberty and the encounter does not result in a seizure." *Id.* at 539 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Poulson's choice to voluntarily approach and speak with law enforcement also is fatal to his *Miranda* claim. "Whether a suspect is 'in custody' under *Miranda* is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with formal arrest.'" *Harris v. Commonwealth*, 27 Va. App. 554, 564 (1998) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "Absent the combination of both custody and interrogation, there is no

presumption of compulsion and there is, therefore, no call for *Miranda*'s implementing countermeasures." *Thomas v. Commonwealth*, 72 Va. App. 560, 579 (2020).

Here, after the police arrived at his house to investigate the reported crash, Poulson exited his residence and approached the officers as they stood away from the house and near his vehicle. The police had not even knocked on Poulson's door or otherwise summoned him out of the house. Poulson exited his house and voluntarily spoke with Flynn and responded to his questions. Before continuing the conversation and submitting to the preliminary blood test and field sobriety tests, Poulson returned inside, dressed, and again voluntarily exited his residence and continued his interaction with the officers. Contrary to Poulson's assertion, he was not seized until after he voluntarily submitted to the tests and was placed under arrest. Because the encounter remained consensual until the police arrested him, the police did not subject Poulson to custodial interrogation before the arrest. Thus, he was not entitled to be advised of his *Miranda* rights at the time of his statements to the police. Accordingly, the circuit court did not err in denying Poulson's motion to suppress.

### III. CONCLUSION

Because Poulson's interactions with the police were consensual prior to the time of his lawful arrest, there was no violation of his Fourth Amendment or *Miranda* rights. Therefore, we affirm the circuit court's judgment.

*Affirmed.*